# EXHIBIT 6

**Foreign Gifts and Contract Disclosures**
**Summary of Public Comments with Responses**

**Introduction**

The U.S. Department of Education (Department) received four comments on the foreign gifts and contract disclosures information collection request. Below we group and respond to comments topically. We note that if any question from the disclosure form is held invalid the remainder of the questions will not be affected. The questions on the form are severable.

**Name and Address of Foreign Source**

**Comments**: Commenters asserted that 20 U.S.C. § 1011f does not authorize the Department to request or disclose the name and address of a foreign source and that such collection and disclosure require a legislative change. One commenter asserted that natural person donor information is not appropriately collected under the statutory language. One commenter noted that other State and Federal laws protect donor confidentiality and argued that requiring institutions to disclose donor names and addresses violates Executive Order 14219 (Ensuring Lawful Governance and Implementing the President's "Department of Government Efficiency" Deregulatory Initiative) by relying on an unlawful delegation of legislative power, failing to apply the best reading of the statute, and imposing significant costs on institutions that are not justified by the benefits. Commenters also asserted that compelled disclosure of donor information burdens First Amendment associational rights. Commenters noted that certain parties prefer to remain anonymous for a variety of reasons, including physical safety and religious or political persecution and that requiring disclosure of a party's identity would create a disincentive for donations. Other commenters noted that sometimes it is nearly impossible for an institution to obtain the name or address of a donor party. One commenter argued that the Department mischaracterizes the Section 117 data collection as not requiring disclosure of sensitive information. Commenters also suggested that if the Department declines to adopt the recommendation that it should not collect or publish names and addresses of counterparties to qualifying foreign gifts and contracts, the Department should create a narrowly tailored accommodation for donors who request confidentiality due to the risk of reprisal or persecution and only publish the data prospectively.

**Response**: The Department requires the name and address of foreign sources to assess an institution's compliance with Section 117 the Higher Education Act of 1965 and has been requesting such data since 2020. Section 117 is a transparency statute requiring institutions to inform the public about certain gifts from and contracts with foreign sources and their agents. Section 117 further specifies in 20 U.S.C. § 1011f (e) that "all disclosure reports required by this section shall be public records open to inspection and copying during business hours." 20 U.S.C. § 1011f (a)-(d) provides the items to include in the disclosure report as well as related information. This collection implements these sections and makes the disclosure report available for public inspection pursuant to the clear statutory requirement of § 1011f(e). Beyond facilitating the public's right to inspect disclosure reports submitted to the Department, Section 117 also includes an enforcement section, 20 U.S.C. § 1011f (f), which authorizes civil action

when "it appears that an institution has failed to comply with the [statutory] requirements." The names and addresses of foreign sources are required to enforce the provisions of the statute and to support the agency's ability to process the information in a manner that allows it to identify possible noncompliance. As it has since 2020, without any apparent chilling effect on qualifying gifts from or contracts with institutions (*e.g.*, the second highest reporting period in history occurred in the most recent reporting period), the Department will continue to collect the names and addresses of qualifying foreign counterparties involved in Section 117 transactions. Furthermore, publication is required by the statute. The requirements of the statute take precedence over any potential disincentive to qualifying foreign gifts or contracts, as well as to any State laws or institutional policies protecting donor confidentiality. As to the difficulty of obtaining the name and address of donors who want anonymity, it is the institution's responsibility to initiate additional investigative efforts to determine if a donor is a foreign source, even if the donor or donor's agent request anonymity. If the institution is unwilling to exercise such minimal due diligence, then it may wish to consider the statutory implications of the institution's failure to obtain the requisite foreign counterparty identity data. It is also noteworthy that previous civil investigations by the Department have indicated that institutions were, without exception, fully aware of the identities of foreign counterparties.

The Department acknowledges that non-U.S. persons retain certain constitutional rights within U.S. borders, and that institutions of higher education may have interests in not disclosing their associations with foreign donors. These interests, to the extent applicable, are not absolute and must be weighed against compelling public interests. In this case, the public interest at stake—the ability to examine substantial foreign financial ties with domestic institutions of higher education, including research institutions involved in the taxpayer-funded development of critical and emerging technologies—is substantial and directly affects U.S. national security considerations. Public access to the identities of qualifying foreign counterparties is essential to transparency and helps ensure that the national interests of the United States are protected. Accordingly, it is not only statutorily required but also in the best interests of the United States' national security to provide access to the identities of qualifying foreign nationals and entities that provide gifts to, or enter into contracts with, institutions of higher education and the Department's ongoing collection and public release of this limited foreign counterparty information falls within, and does not exceed, the Department's authority under Section 117.

Similarly, the constitutional right of association does not extend to include the counter-statutory concealment of foreign counterparty identities (or even protection of associated personally identifiable information (PII)). Therefore, the First Amendment cannot be used to conceal the identities of qualifying foreign counterparties (even as the Department continues to withhold additional PII such as foreign counterparty addresses from disclosure). Furthermore, any rights of natural persons or artificial persons (*e.g.*, foreign corporations or other entities) must be balanced against the compelling transparency mandates of Section 117 and related national security initiatives protecting the taxpayer-funded Federal research enterprise. Therefore, the collection and publication of qualifying foreign donor and contractor identities who provide gifts to, or enter contracts with, institutions of higher education are justified and within the Department's authority under Section 117.

The Department also recognizes the Supreme Court's decisions in *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021), and *First Choice Women's Res. Ctrs., Inc.*

*v. Davenport*, 608 U.S. __ (2026). In those cases, the government interests involved were unrelated to national security and focused on protecting the associational rights of nonprofit organizations. Section 117 involves very different statutory concerns: the information collected often involves foreign relationships that may have a direct and significant impact on national security. Some institutions have repeatedly disregarded warnings from U.S. government agencies about funding from foreign entities of concern that appear on various U.S. government lists indicating the need for heightened diligence by institutions, including entities associated with potentially adversarial entities from Russia, China, and Iran. These entities continue to provide gifts and enter contracts with domestic institutions, placing U.S.-funded critical research at significant risk. Because no other government agency is statutorily compelled to collect comparable information from institutions, the national security benefits of providing for public inspection of the identities of qualifying foreign counterparties outweigh the associational and limited privacy interests of foreign nationals (natural and artificial persons) and their domestic counterparts.

The Department further notes that it is very much a voluntary act for a foreign source (natural person or artificial person) to provide qualifying gifts to or enter contracts with domestic institutions of higher education. The concern about disincentives to gifts or investments in the projects of U.S. institutions does not outweigh the transparency requirements of Section 117. Further, as noted, the most recent disclosure period was the second highest on record – indicating the provision of counterparty data to the Department has not had a discernible negative impact on qualifying foreign gifts and contracts to and with institutions. The statute is also very clear that the term "foreign source" includes natural persons and therefore the reporting and publication requirements apply to natural persons in full. The Department has the authority to collect and share the names and addresses of foreign counterparties and will act within its authority. The Privacy Act of 1974 (5 U.S.C. § 552a *et seq*.) applies solely to U.S. citizens and lawful permanent residents (green card holders). Therefore, unless a foreign counterparty holds a valid green card, they do not have rights under the Privacy Act, and the Department has authority to share foreign counterparty PII publicly.

The Department acknowledges the recommendation to establish a provision for donors who seek confidentiality because of potential risks of reprisal or persecution. The Department cannot determine the credibility of risk to donors, particularly considering the clear statutory requirement that disclosure reports provided to the Department be made available for public inspection[1]. If an institution has genuine concerns about the risks of disclosure, it is up to the institution and foreign counterparty (natural persons and artificial persons) to determine whether there is such a risk and to act accordingly. Once again, the act of providing a qualifying gift or entering a qualifying contract is wholly voluntary and, to the extent there is any associated risk, the foreign source and the institution may freely consider any risk and make determinations about whether to provide the gift or enter the contract. As to the publication of data that was provided for prior periods before the Department was specific about its intent to publish natural person donor identity (not addresses or similar data), the Department notes that it has been clear that the previous policy to not publish names and addresses was a policy determination based in part on the representations by certain institutions that the information was protected by the Freedom of Information Act (FOIA) and other expressed concerns of institutions. At this point

[1] Although the statutory disclosure requirement does not include any qualifications for disclosure, the Department will continue to withhold foreign counterparty addresses and similar data, other than counterparty identities.

based on evidence from the Department and other reliable sources--including, without limitation, Congressional committees and national security assessments--the statutory inspection requirement outweighs countervailing confidentiality interests or FOIA-based objections. As far back as 2020, one commenter noted the possibility over time that an administration could change its position vis-à-vis publication of name and/or address data[2]. In its response to comments provided back in 2020 about this concern, the Department was clear that FOIA requires the Department to balance, on a case-by-case basis, an individual's privacy interests against the public's interest in disclosure. Only where the privacy interest outweighs the public's interest in disclosure does FOIA mandate that the information be withheld. In 2020, the Department specifically acknowledged that there were no guarantees that there would not be policy changes in future administrations with respect to publication of counterparty information. In that response, the Department noted that it would continue to consider the safety of foreign donors and contractors in countries where religious persecution is known to occur and the privacy concerns implicated in their personally identifiable information, although the Privacy Act's protections do not apply to such foreign natural persons. It is notable, too, that the most recent disclosure reports submitted to the Department reveal extensive and substantial foreign funding from countries of concern (defined by Congress at 42 U.S.C. § 19221(a)(1)), indicating that institutional concerns about the safety and human rights of natural person donors in those countries is apparently not a compelling concern to institutions. Nonetheless, the Department continues to recognize and has considered these concerns as it balances them against the importance of statutorily mandated transparency and national security requirements. As noted, the addresses (and similar PII) of foreign counterparties will continue to be withheld, even though the Privacy Act's protections do not apply to foreign nationals. Based on this balance and the additional community comments, the Department is making a change to the publication parameters. The publication of counterparty names will occur on July 15, 2026.

**Change**: In deference to the community's concerns about risk to individuals, the Department agrees as a policy matter that it will only publish the name of foreign sources of qualifying gifts and contracts and not the addresses (or similar PII), although the Department has the legal right to continue to collect and to disclose identities and addresses of all reported foreign sources.

**Elimination of the Freedom of Information Act (FOIA) Exemption Checkbox**

**Comments**: Several commenters stated that removing the FOIA checkbox deprives institutions of protections to which they are entitled and argued that the elimination of the FOIA checkbox represents a significant change implemented in January without prior notification to institutions.

**Response**: As noted above, the transparency requirements of Section 117 are primary and must be weighed against the FOIA protections. It is notable that, in this instance, in the period from July 2023 through December 2025, only 21% of the transactions reported by institutions were designated by institutions as exempt under FOIA and only 18% of the institutions reporting identified one or more qualifying transactions as exempt under FOIA. On balance, the transparency goal outweighs the potential FOIA exemption, particularly given the limited assertion of the FOIA exemption by institutions. As such, elimination of the FOIA check box

[2] https://fsapartners.ed.gov/sites/default/files/2023-04/ResponsetoPublicComments30daynotice.pdf

option does not constitute a substantial change and is required by the necessary balancing of the interests discussed above.

**Change**: None.

**Acknowledgement and Certification Requirements**

**Comments:** One commenter asserted that the ICR inappropriately expands or modifies the Federal false statements acknowledgement, especially because the Department has not issued formal guidance or regulations. Another commenter argues that the certification is inappropriate because Title IV participating institutions could lose eligibility for participation in Federal student financial aid programs for noncompliance with Section 117 and that the certification establishes individual liability on the part of institutional certifiers.

**Response:** The false statements acknowledgement is consistent with the law and with the acknowledgement language in the previous reporting disclosure iterations. There is an additional certification as follows: "I certify to my institution's compliance with the conditions and requirements of 20 U.S.C. § 1011f." The implication from the commenter is that it is not appropriate for the Department to request this certification because the Department has not published regulations concerning Section 117. The proposed certification on behalf of the institution in the collection does no more than implement the statutory reporting requirement on institutions as a means of promoting compliance with Section 117. The scope of the reporting requirements contemplated in the collection is based on the statutory requirements, definitions, and schemes. The Department is not required to issue regulations to repeat the provisions of what is a self-implementing statute. Further, contrary to the assertions of the commenter, the Department has provided specific and detailed guidance concerning what is expected of institutions of higher education to comply with Section 117. For example, the Department has issued Frequently Asked Questions, provided extensive in-person and webinar trainings, and responded to interpretive questions sent from institutional representatives to the Department. Institutions have had extensive opportunities to review the Department's views and guidance regarding the nature and scope of Section 117's disclosure requirements. The Department does appreciate the commenter's acknowledgment that failure to comply with Section 117 could result in an institution losing Title IV program participation eligibility. This is precisely why the Department proposed requiring the additional certification of institutional compliance with 20 U.S.C. § 1011f. Such certifications protect institutions by assuring the accuracy, completeness, and timeliness of Section 117 information submitted to the Department. However, the Department does not have the authority, absent very specific circumstances, to impose personal liability on institutional employees operating fully within the scope of their institutional employment as such employment relates to Section 117. Consequently, the Department is proposing to revise the certification to clarify that the certification is on behalf of the institution, as represented by an authorized individual employee of the institution. However, if that certification is incorrect, the institution will be liable for that certification of compliance with Section 117.

**Change**: In response to the commenter's concern, the Department will change the language of the certification to: I certify on behalf of my institution that the institution is in compliance with the conditions and requirements of 20 U.S.C. § 1011f."

**Public Transparency Dashboard**

**Comments:** One commenter stated that the presentation of data on the Section 117 Foreign Gift and Contract Public Transparency Dashboard is misleading and risks the public inferring that institutions have ongoing relationships with listed entities while the institution may have ended the relationship years ago. The commenter also states that users cannot locate or do not possess the expertise necessary to analyze the data spreadsheets. On that basis, the commenter requests that the Department add date-based filtering and views; distinguish between current and historical relationships; provide definition and source links and add a methodological transparency section. One commenter also asserted that it is unclear if the data presented on the website is consistent with the information included in the data spreadsheets on the basis that the data spreadsheets only reflect reporting through September 2025 and do not appear to include the January 2026 data reported by the institutions represented by commenter. One commenter complained about the connection to other published government lists in terms of relevance and time differentials. The commenter also raised the concern that the Public Transparency Dashboard implies that accepting funding from entities on the defined U.S. government lists is illegal or illicit, arguing that the list designation only means that the relationship may require more security restrictions or a mitigation plan. The commenter also complained that the Department does not appear to have corrected inconsistencies in source country names. Finally, one commenter complained that the Department's press release concerning the Dashboard noted a consistent pattern of late filing by institutions but failed to note that the Department updated the portal in January 2025 and only made it available a week before the reporting deadline. The same commenter also argued that institutions may have been outside normal reporting deadlines because the Department issued updated guidance regarding the reporting of foreign campuses.

**Response**: The commenters' concerns about the Public Transparency Dashboard can be summarized as preferring that the Department not correlate its public data to other public government lists of concern and that the information not be made so readily available for public inspection. Several of the comments revolve around whether the public can understand the timing of the institution's reports and inclusion on these lists because the lists and the relationships between the institutions and counterparties change over time. The Department notes that the commenters' concerns are already accommodated by the Public Transparency Dashboard and other publicly available information provided by the Department. First, the data spreadsheets that are published by the Department can be filtered by contract start date, contract end date, gift receipt date, and submission date. Thus, any questions about timing are easily resolved through the searchable filters. Second, if a contractual relationship of possible reputational or other concern to an institution ends in advance of the contract end date, the institution remains completely free to issue a statement or other communication to that effect to address any concerns it has about whether a relationship is ongoing. Third, if the institution received a disclosable foreign gift or entered a disclosable foreign contract before the foreign counterparty appeared on one or more of U.S. government lists of concerning foreign entities for which caution should be exercised, the reporting institution could simply issue a clarifying

statement to that effect. Fourth, as to source links, definitions, and methodological transparency, the Public Transparency Dashboard identifies each U.S. government list and the corresponding agency or data source. Each applicable agency or data source provides significant information about the parameters of each list that has long been fully accessible by every reporting institution. It is an institution's responsibility to monitor available Federal government resources and applicable legal requirements to assure itself that it is only contracting with or receiving gifts from legitimate and appropriate foreign sources. The correlation of reported information to entities appearing on U.S. government lists of foreign counterparties of concern is designed to provide precisely such a cautionary service to reporting institutions. As to the issue concerning consistency of foreign source names, the reporting portal countries are based on the list of countries published by the U.S. Department of State and the Public Transparency Dashboard references countries based on the statutory list of recognized countries of concern (as defined by 42 U.S.C. § 19221(a)(1)). Also, Section 117 disclosures occurred long before the Department adopted the current country name selection options, so the Public Transparency Dashboard sometimes includes the country names as reported by institutions rather than based on the now-available structured drop-down list. As such, any discrepancies are based on institutional reporting over time or, at times, changes in the names of countries, and not based on any failure of the Department to recognize that these discrepancies exist.

The Department also disputes the commenter's characterization that the portal was down for a significant period prior to the January 2025 reporting deadline (thereby accounting for the consistent pattern of institutions subject to Section 117 reporting late). Contrary to the commenter's implication, there were only two extremely brief windows in January 2025 during which the reporting portal was inaccessible to user institutions. On January 27, 2025, the Department's reporting portal experienced intermittent access issues that were related to the platform for the portal, rather than the portal itself. The issues were resolved by that evening, and the reporting portal was again fully operational. Further, the team managing the reporting portal notified the six impacted users that the site was once again fully available for access and use on January 28, 2025, at 7:12 am. In addition, on January 30, 2025, the site was closed for required maintenance from approximately 8:00-10:00 pm eastern to update the portal to allow multi-line text in response to certain questions. During that window, eight users attempted to access the reporting portal. Those users were then notified on January 31, 2025, at 6:16 am that the reporting portal was again fully operational. There is nothing in these two very limited outages that excuses the scope of late Section 117 filings by higher education institutions. Similarly, the same commenter seems to imply that issuance of guidance concerning reporting of foreign campuses "during the year" accounted for a significant portion of the late filings referenced in the press release. The commenter is unclear about which guidance it was referencing. As early as November 29, 2023, the Department clarified in its Frequently Asked Questions that Section 117 requires disclosure of gifts to and contracts involving an institution's campuses located outside of the United States. If that is the guidance to which commenter is referring, it does not seem to justify late filings referenced in the Department's press release, which were limited to the period between February 28, 2025, and December 16, 2025.

**Change:** None.

**Burden Estimate**

**Comment**: One commenter asserts that the Department underestimated the cost and burden of complying with Section 117.

**Response**: The basis for the commenter's assertion is a "recent" survey of research institutions. There is no description of how the survey was conducted or whether it occurred before or after implementation of the new reporting portal, including the bulk upload capacity which provides for far more efficient entry of data by reporting institutions in comparison to the single "line-by-line" entry capability of the previous reporting portal. It is the view of the Department that the new operational reporting portal is significantly more user-friendly for timely and accurate submission of qualifying foreign gifts and contracts by institutions, thereby significantly reducing associated Section 117 compliance costs and burdens for reporting institutions.

**Change**: None

**Renewal**

**Comment:** One commenter suggests that this information collection request is not a renewal of an existing collection on the grounds that two changes are substantial: collection and publication of names and addresses and the additional certification.

**Response:** The collection of donor names and addresses has been in place since 2020, although some institutions have continued to evade their disclosure obligations with respect to that information. As noted above, publication of those names and addresses has always been consistent with the statutory transparency requirement. A prior policy choice not to publish that information--made under different circumstances and based on different consideration--cannot override the clear statutory requirements and intent of Section 117. As to the certification, the Department has responded by providing a modification to clarify that the certification is not intended to impose personal liability on the part of institutional personnel with Section 117 responsibilities.

**Change**: None