# EXHIBIT 8

American Council on Education

June 15, 2026

Carolyn Rose
U.S. Department of Education
Federal Student Aid
400 Maryland Avenue SW
Washington DC 20202

**Subject: Docket No: ED-2026-SCC-1354, Agency Information Collection Activities; Comment Request; Foreign Gifts and Contracts Disclosure**

Dear Ms. Carolyn Rose,

On behalf of the American Council on Education and the undersigned major higher education associations, we offer the following regarding the proposed revisions to information collection request (ICR) ED-2026-SCC-1354, Foreign Gifts and Contracts Disclosure under Section 117 of the Higher Education Act.

The higher education community takes seriously its reporting obligations under Section 117 of the Higher Education Act (HEA). Our associations and the broader higher education community continue to work with the administration and policymakers to address concerns regarding malign foreign influence and research security. National Security Presidential Memorandum 33 (NSPM-33), which our community worked closely with the administration on creation and implementation of, specifically and importantly references Section 117 as an important tool in addressing these issues.[1] President Trump also issued Executive Order "Transparency Regarding Foreign Influence at American Universities" which requires the department to take actions to further strengthen reporting and compliance with Section 117.[2] As one of the many tools for the federal government to use in addressing national security and foreign malign influence threats, we appreciate the seriousness and importance of complying with this reporting requirement, as well as addressing emerging research security threats.

While we appreciate the opportunity to comment on the proposed ICR, we believe that the department continues to exceed its statutory authority and disregard constitutional inhibitions in several key areas. In addition, we continue to urge the ED to engage substantially with stakeholders and help ensure that institutions of higher education understand and can comply with their statutory obligations. We also offer comments regarding the new foreign funding portal (https://www.foreignfundinghighered.gov/), which the department intends to populate with additional information collected under this new ICR.

---

[1] "The Secretary of Education shall continue to support the balance between academic freedom and national security by promoting financial transparency in the relationship between institutions of higher education (IHEs) and foreign sources through enforcement of section 117 of the Higher Education Act. ED shall continue to ensure that it provides, and updates as necessary, clear public guidance to IHEs on compliance with section 117 requirements, and shall continue to ensure that disclosed information is made publicly available in a format that is readily accessible and usable." https://trumpwhitehouse.archives.gov/presidential-actions/presidential-memorandum-united-states-government-supported-research-development-national-security-policy/

[2] https://www.whitehouse.gov/presidential-actions/2025/04/transparency-regarding-foreign-influence-at-american-universities/

As part of the supplementary information included in the Federal Register notice, the department notes, "FSA is seeking renewal for substantially the same information collection, utilizing a new more user-friendly portal located at https://www.foreignfunding.highered.gov." While the federal efforts to bring more transparency to the information reported through Section 117 is laudable, we disagree with this statement. Two changes are substantial: collection of names and allowing them to be made public, as well as the requirement for an individual to certify that an institution is in compliance with Section 117.

**Concern with Public Disclosure of Donor Names**

The Supporting Statement included in the updated ICR notes, "Consistent with the requirements of Section 117, the Department intends to publish the contents of reports made by institutions of details about specific counterparties, such as the counterparty's name."[3] However, Congress never intended that Section 117 require institutions to report all information regarding all gifts and contracts with all foreign sources to ED or to the public. To the contrary, Congress specified what the "disclosure report" "shall contain."[4] The Section 117 statute provides that institutions are to report "the aggregate dollar amount of such gifts . . . attributable to a particular country. The country to which a gift is attributable is the country of citizenship, or if unknown, the principal residence for a foreign source who is a 'natural person'" (emphasis added). As a result, the department's requirement that institutions report the names of individual donors and that it intends to publicize such information exceeds its statutory authority and is therefore impermissible. When a federal agency acts in excess of its statutory authority, that action is *ultra vires* and should be vacated. See, e.g., Aid Ass'n for Lutherans v. U.S. Postal Serv., 321 F.3d 1166, 1168, 1175 (D.C. Cir. 2003) (agency action is *ultra vires* when it "exceed[s] the agency's delegated authority under the statute."); Dart v. United States, 848 F.2d 217, 224 (D.C. Cir. 1988) (agency violation of "'clear and mandatory'" statutory provision is *ultra vires*).

While being outside the statutory authority, the department's continued efforts requiring the reporting and disclosure of individual donor information are also likely unconstitutional in violation of the First Amendment. In *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021)(*AFP*), the Supreme Court struck down California's donor disclosure law applicable to nonprofits, basing its holding on the well-established First Amendment right of nonprofit organizations not to disclose confidential donor information because of the risk that public disclosure could potentially chill associational rights.[5] This past April, in *First Choice Women's Res. Ctrs., Inc. v. Davenport*, 608 U.S. __(2026), the Supreme Court unanimously reaffirmed the principles in *AFP* in siding with the pro-life clinic plaintiff, holding that a subpoena from New Jersey's Attorney General demanding personal information about its individual donors injured the religious nonprofit organization in violation of its First Amendment right to freedom of association. According to the Court in *First Choice*,

> "An official demand for private donor information is enough to discourage reasonable individuals from associating with a group. It is enough to discourage groups from expressing dissident views. A government that chooses to make private donor information public may make the damage worse. But "[e]ven if there [is] no disclosure to the public, the pressure" to avoid ties and speech "which might displease" officials demanding disclosure can "be constant and heavy." *Shelton*, 364 U.S. at 486; see also

[3] Page 5, Supporting Statement for Paperwork Reduction Act Submission, Foreign Gifts and Contracts Disclosure.
[4] See 20 U.S.C. § 1011f(b)–(c), (h).
[5] *Americans for Prosperity Foundation v. Bonta, Attorney General of California,* 594 U.S. 595 (2021):

> *AFP*, 594 U.S., at 616 ("assurances of confidentiality . . . do not eliminate" the First Amendment injury caused by the demand for private member or donor information.")" *First Choice* at 21.

In addition, we remain deeply concerned that public disclosure of the donor names could have tragic, and even deadly, consequences for some foreign donors, including for example, a political dissident of a repressive government living abroad who does not want their support of U.S. institutions revealed due to safety concerns for their family; prominent foreign individuals advancing Westernizing (pro-democracy) causes in a home country that may be undermined by disclosure of their support of a U.S. institution; donors who may be at risk of physical harm or kidnapping in countries where organized crime preys upon individuals for financial compensation; or donors to an institution with a religious mission who may be targeted for their support.

If ED continues to seek the names and addresses of anonymous donors, this must be addressed through a change in the statute, similar to the enabling legislation for IRS Form 990. IRS Form 990 provides the government the information it needs to conduct oversight under specific statutory authorization by Congress, while also importantly restricting the IRS from publicly disclosing the collected donor information.

We strongly urge the department to continue to allow institutions to indicate whether the name of the donor should be restricted under the ICR. The federal security agencies have access to this non-publicized data for national security purposes, as does ED for the purpose of auditing and investigative purposes. Allowing this information to become public would have a chilling impact on legal foreign donations from alumni and others to our institutions. However, if the department proceeds with the publication of individual donor names, this should only be applied going forward and not in a retrospective manner. To do so would mean disclosure without consent.

In addition, we are very concerned that the department appeared to make this major change to the reporting portal in January, removing the ability to indicate that donors' names should remain private for privacy or proprietary concerns, without any public notice or indeed a notice to reporting institutions. This action demonstrates the department is acting without stakeholder feedback and directly impacting the ability of institutions to comply with this important reporting requirement.

**Concern with Certification Process Involving Individual Submitting Report**

The proposed ICR includes a new certification for the individual submitting the information, requiring the individual to: "…certify to my institution's compliance with the conditions and requirements of 20 U.S.C. § 1011f." Congress specified an enforcement provision in Section 117, which authorizes the department to refer an institution to the Department of Justice to compel compliance. In addition, following a knowing or willful failure to comply, a school must reimburse the U.S. Treasury for the full cost of obtaining compliance.

Since 2018, the department has increased efforts around Section 117 compliance, including incorporation of Section 117 into an institution's program participation agreement (PPA) for Title IV

federal student aid eligibility.[6] This could result in an institution losing access to Title IV eligibility due to being out of compliance with Section 117, which is a very serious impact for any institution of higher education.

The department should focus on its authority under Section 117, which includes carrying out investigations of institutional compliance with Section 117. The department is aware it has such authority as it has conducted several such investigations.[7] The authority to seek individual certification is absent from the existing statute and could create liability for individuals that does not exist in statute. We believe this individual certification should be removed in any final ICR.

**Concerns with New Foreign Funding "Portal"**

As part of this new ICR, the department references the new website https://www.foreignfundinghighered.gov/ launched in 2025 that seeks to bring more transparency to the Section 117 reports. While it is helpful that the information on this new website is presented in a more user-friendly format than the previous spreadsheets which were made public[8], we have concerns regarding the portal and the confusing nature of the information presented to the public. We hope the department will address these concerns in any update to the portal to bring more transparency and context to the data reported by our institutions. As of May 2026, these concerns include:

- The numbers included throughout the dashboard are cumulative. The dashboard does not allow users to break it out by year (so the public cannot see trends) and does not include or list the years reflected in the overall data. Federal regulations have changed considerably in recent years, and without breaking down data by year, the current dashboard's compliance with new regulations cannot be easily observed.

- It is unclear if the data presented on the website is consistent with the information included in the FSA spreadsheets (referenced above), as those only reflect reports until September 2025 and do not appear to include the January 2026 data reported by our institutions. The years reported are not reflected on the website.

- As of February 2026, the department has added new categories regarding "U.S. govt lists," "countries of concern," "counterparties of concern," and "funding of universities for foreign entities on U.S. govt lists." Our institutions are aware of the lists of concerns posted by the Department of Defense, Department of Commerce, and other federal agencies. However, the categories in the dashboard include currently banned entities such as Huawei, which were placed on the banned entities list in 2019. Since that time, institutions have NOT accepted money from Huawei. However, since the information is cumulative, that data implies that institutions are still

---

[6] November 2020, "The Department's Enforcement Authority for Failure to Adequately Report under Section 117 of the Higher Education Act, as Amended." https://www.federalregister.gov/documents/2020/11/13/2020-23526/the-departments-enforcement-authority-for-failure-to-adequately-report-under-section-117-of-the

[7] The Department currently has 8 open compliance reviews, including one which was opened in 2019: https://fsapartners.ed.gov/knowledge-center/topics/section-117-foreign-gift-and-contract-reporting/resources/notices-compliance-review-and-records-requests

[8] September 2020- February 2025 Section 117 data "spreadsheets": https://fsapartners.ed.gov/knowledge-center/topics/section-117-foreign-gift-and-contract-reporting/section-117-foreign-gift-and-contract-data

currently accepting funds from banned entities (which is illegal). Additionally, at least one of the Department of Defense lists was only made public in 2024.

- The dashboard as it is currently presented implies that accepting funding from entities on U.S. government lists is illegal or illicit. In many cases it is not but may require more security restrictions or a mitigation plan. Federal research agencies[9] have the ability to require a research security mitigation plan if there are partnerships that are flagged, none of this context is included on the dashboard. The Sec. 117 reporting shows institutions are transparent about these research partnerships.

- It is also important to point out that in some cases tuition paid is a reportable item under Sec. 117. Without timelines and other details, the charts imply inappropriate behavior. This is an incorrect assumption.

- The department does not appear to have revised inconsistencies in source country names: Both “England” (No. 4) and “Great Britain” (No. 9) make the list of the top 10 donor countries. The database also reports separate amounts for “Korea,” “South Korea,” and the “Republic of Korea.”

- The ED press release[10] announcing the update to the dashboard notes, "Additionally, between February 28, 2025, and December 16, 2025, more than $2 billion in reportable gifts and contracts were reported late, in direct violation of statutory requirements." This fails to note that the department updated the portal in January 2025 and only made it available a week before the reporting deadline. The department also issued updated guidance during the year regarding the reporting of foreign campuses. Institutions may have reported that information as soon as it was available, and therefore out of the normal reporting deadlines.

**Concerns Regarding Reporting Burden**

We believe the department continues to underestimate the cost and burden of Section 117 reporting for institutions of higher education. A recent survey of research institutions estimated annual burden hours for the central office functions associated with Section 117 reporting ranged from approximately 15 hours annually to 160 hours annually. Those estimates reflect only the efforts of the central offices to compile and submit the reports and do not include the additional time burden incurred by individual departments, schools, or units in gathering and providing the underlying data. For smaller institutions, this reporting and cost of compliance is likely more burdensome.

---

[9] See 2026 Department of War risk mitigation matrix here: https://basicresearch.defense.gov/Portals/61/Documents/Academic%20Research%20Security%20Page/2026%20DoW%20Component%20Decision%20Matrix%20to%20Inform%20Fundamental%20Research%20Proposal%20Mitigation%20Decisions.pdf?ver=uf_txB5YT_N7ewpWfbpO5w%3d%3d and National Science Foundation (NSF) “Trusted Research Using Safeguards and Transparency (TRUST)” Policy Memo: https://nsf-gov-resources.nsf.gov/files/NSF%20OCRSSP%20TRUST%20Policy%20Memo.pdf

[10] February 2026 “U.S. Department of Education Releases Latest Foreign Funding Disclosures from Federally-Funded American Universities”: https://www.ed.gov/about/news/press-release/us-department-of-education-releases-latest-foreign-funding-disclosures-federally-funded-american-universities

In conclusion, we hope the department can work collaboratively with the higher education community on any update to the ICR and in the development of the new foreign funding portal. We are supportive that the updated ICR clarifies the ability of institutions to do “batch uploads” for Section 117 reporting requirements. We look forward to working with you to continue to address national security and foreign malign influence concerns in support of our institutions, students, and U.S. taxpayers.

Sincerely,

Ted Mitchell, President

On behalf of:

AAMC (Association of American Medical Colleges)
American Association of Colleges and Universities
American Association of Collegiate Registrars and Admissions
American Association of State Colleges and Universities
American Council on Education
Association of American Law Schools
Association of Jesuit Colleges and Universities
Association of Public and Land-Grant Universities
Career Education Colleges and Universities
Council for Advancement and Support of Education
Council of Graduate Schools
Council of Independent Colleges
EDUCAUSE
Hispanic Association of Colleges and Universities
NAFSA: Association of International Educators
National Association of College and University Business Officers
National Association of Independent Colleges and Universities
National Association of Student Financial Aid Administrators