# EXHIBIT 9

Association of American Universities
America's Leading Research Universities

June 10, 2026

**To:** Carolyn Rose
Management and Program Analyst
Federal Student Aid
U.S. Department of Education
400 Maryland Avenue SW
Washington, DC 20202

**From:** Kate Hudson
Deputy Vice President and Counsel for Government Relations and Public Policy
Association of American Universities

Meredith Asbury
Associate Vice President for Government Relations and Public Policy
Association of American Universities

**Re:** **Agency Information Collection Activities; Comment Request; Foreign Gifts and Contracts Disclosures**

**Docket**: ED-2026-SCC-1354

On behalf of the Association of American Universities (AAU), representing 69 leading research universities in the United States, we write to you regarding the Department of Education's proposed Information Collection Request (ICR) on Foreign Gifts and Contracts Disclosures published in the Federal Register on April 14, 2026, Docket No. ED-2026-SCC-1354.

AAU member institutions take seriously their obligations to disclose any foreign gifts and contracts that they receive, as required under Section 117 of the Higher Education Act of 1965 (HEA). In recent years, institutions have substantially strengthened their compliance infrastructure, building robust internal systems to identify, value, and accurately report foreign gifts and contracts above the statutory threshold and coordinating across research,

development, alumni, finance, and general counsel offices to meet those obligations. AAU members remain committed to transparency and continued improvement in this area.

Despite this commitment, AAU is concerned that the proposed ICR would continue to expand Section 117 reporting requirements beyond the statute's text and that it will do so through an informal information-collection mechanism rather than through a public notice-and-comment rulemaking process required of such significant regulatory changes. The Department has never issued formal guidance under Section 117 to clarify institutional reporting obligations. Using the ICR process to effectively rewrite those obligations, which have never been clarified with formal guidance, risks circumventing the procedural safeguards of the Administrative Procedure Act and deprives the regulated community of a meaningful opportunity to comment on proposed changes before they take effect. Therefore, AAU urges the Department to use the proper rulemaking process to pursue any meaningful expansion of Section 117 reporting requirements.

The ICR notice poses five questions for public comment. AAU addresses two of those questions below and provides legal analysis on provisions that, we argue, exceed the Department's statutory authority and raise significant constitutional concerns.

**<u>(Question 1) Is this collection necessary to the proper functions of the Department?</u>**

The proposed collection requires information beyond what Section 117 of the Higher Education Act authorizes and is, therefore, outside the scope of the Department's statutorily mandated functions. As detailed below, the proposed ICR would publicly disclose individual foreign donors' personally identifiable information – a requirement that lacks statutory basis, conflicts with the Department's prior commitments, and raises serious legal concerns. These concerns include inconsistency with Section 117's text, the elimination of procedural protections under the Freedom of Information Act (FOIA), significant First Amendment implications, and expanded certification requirements that create unjustifiable legal exposure for universities. AAU does not object to collecting information clearly required by statute. Rather, AAU urges the Department to limit the ICR accordingly and pursue any expansion through formal notice-and-comment rulemaking.

***I. The Proposed Collection and Public Disclosure of Donors' Personally Identifiable Information Exceeds the Department's Authority Under Section 117.***

AAU reiterates and reaffirms prior statutory and constitutional objections to requiring institutions to collect and disclose individual foreign donors' names and addresses, which are

detailed in prior comments.[1] What is new, and what demands a specific response with respect to this ICR, is the Department's stated intention to publicly disclose that information via a transparency dashboard, a significant reversal of the Department's own prior commitments outlined in previous ICRs.

The ICR supporting statement indicates the Department intends to publish the contents of institutional disclosures – including the "counterparty's name" – on the Section 117 Foreign Gift and Contract Public Transparency Dashboard, marking a departure from its prior position. In 2019 and 2020, in direct response to public comments raising those same concerns, the Department stated it would not publicly disclose individual donors' names and addresses.[2] In the 2020 response document, the Department went further, stating affirmatively that it did not view this information as part of the "disclosure for public inspection under Section 117(e)," and that "it is not information that Congress intended to be part of the public disclosure report," emphasizing that the information was instead intended solely to support enforcement actions and verify compliance.[3]

This ICR is inconsistent with those previous commitments and does not explain why the public disclosure of donor information is now necessary. Institutions have submitted donor names and addresses to the Department since 2020 in reliance with those commitments and with the understanding that this information would be confidential and not shared publicly. The Department now proposes to publicly disclose this data in ways that neither institutions nor donors anticipated, with no advance notice or regulatory process, and in direct violation of the donor's privacy rights. A change of this magnitude cannot and should not be accomplished through the ICR.

### *II. The Proposed Elimination of the Freedom of Information Act (FOIA) Exemption Checkbox Forecloses Statutory Protections.*

The proposed ICR also eliminates a procedural protection previously included in the Department's reporting portal: a checkbox allowing institutions to designate the name or

---

[1] Higher Education Community Comments in Response to Agency Information Collection Request – Foreign Gift and Contracts Disclosure – Docket No. ED-2019-ICCD-0114 (Mar. 11, 2020); Higher Education Community Comments in Response to Agency Information Collection Activities; Foreign Gifts and Contracts Disclosures, Docket ID No. ED-2022-SCC-0159 (Feb. 27, 2023).

[2] Foreign Gifts and Contract Disclosures: Summary of Public Comments with Responses, U.S. DEP'T EDUC. (Feb. 10, 2020), https://downloads.regulations.gov/ED-2019-ICCD-0114-0065/attachment_2.pdf; Foreign Gifts and Contract Disclosures: Summary of Public Comments with Responses, U.S. DEP'T EDUC. 7 (Sept. 6, 2019), https://downloads.regulations.gov/ED-2019-ICCD-0114-0002/attachment_2.pdf.

[3] Foreign Gifts and Contract Disclosures (2020), supra.

address of a foreign donor as a trade secret or commercial or financial information that is privileged or confidential and exempt from public disclosure pursuant to FOIA. The checkbox was removed in January 2026, prior to any notice, comment opportunity, or statement in the ICR. This is not a minor administrative change that the department can unilaterally decide to implement as it removes a legal protection that FOIA guarantees.

FOIA Exemption 4 protects from mandatory disclosure "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."[4] The Supreme Court has construed this exemption broadly to protect commercial or financial information that the provider "customarily and actually" treats as private, a standard that covers donor identity information submitted by institutions in connection with foreign gift and contract reporting.[5] Separately, FOIA Exemption 6 protects against disclosure of information about individuals when disclosure would constitute a "clearly unwarranted invasion of personal privacy."[6] The names and addresses of individual foreign donors – who are private individuals making charitable gifts – fall squarely within that protection, particularly given the Department's prior acknowledgment that this information was not intended for public disclosure.

By eliminating the checkbox, the Department is not merely revising a form. It is depriving institutions and donors of the ability to invoke statutory protections that Congress expressly preserved in the FOIA statute itself. The checkbox was a recognition that FOIA exemptions apply to private information submitted to federal agencies, and that institutions have a legitimate interest in flagging protected information before an agency discloses it. Removing that mechanism, while simultaneously announcing an intention to publish the underlying information without a clear mechanism to protect it, risks the disclosure of private, protected information. If the Department intends to publish donor identities collected under Section 117, it should provide institutions with a mechanism to denote exempt information.

### ***III. The Proposed Collection and Publication of Personally Identifiable Information Raises Significant Constitutional Concerns.***

Independent of the statutory issues, the proposal to collect and publicly disclose individual foreign donors' names and addresses raises serious First Amendment concerns. The Supreme Court has made clear that policies compelling the public disclosure of donors' personally identifiable information can infringe upon the freedom of association.[7] Most recently, in *First*

---

[4] 5 U.S.C. § 552(b)(4).
[5] *Food Marketing Institute v. Argus Leader Media*, 588 U.S. 427 (2019).
[6] 5 U.S.C. § 552(b)(6).
[7] *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021).

*Choice Women's Resource Centers, Inc. v. Platkin*, the Court reaffirmed that government actions restricting freedom of association warrant "the closest scrutiny under the First Amendment."[8][9]

The Department's plan to publish donors' names on a public dashboard is inconsistent with these protections. Disclosure may chill foreign individuals' willingness to contribute to American research universities, not because their gifts would be improper, but due to risks attendant to public exposure, including reputational harm, harassment, or adverse consequences in their home countries. This chilling effect on association and expression is constitutionally cognizable and cannot be dismissed as a mere incidental consequence of an otherwise valid regulatory scheme.

Of particular concern is the risk of retroactive public disclosure. Since 2020, the Department has collected donor names and addresses and holds years of accumulated personally identifiable information that institutions submitted based on the Department's explicit commitment not to make such information public. The proposed ICR creates a real possibility that the Department could publish not only upcoming disclosures but historical data as well, effectively "flipping a switch" to expose years of donor information with no notice, no opportunity for affected individuals to object, and no rulemaking process through which the regulated community could challenge that outcome. Retroactive publication of this kind would compound the constitutional harm: beyond chilling future giving, it would impose immediate and concrete harm on donors who relied on explicit assurances of confidentiality previously made by the Department. At a minimum, the Department must make clear that any new disclosure policy would apply only prospectively.

Before requiring public disclosure of this information, the Department must satisfy the demanding standard of constitutional scrutiny applicable to infringements on freedom of association. The proposed ICR does not engage with this analysis, nor does it explain how public disclosure of this information is narrowly tailored to a compelling interest. Consistent with the Department's prior commitments and with the constitutional limits on compelled disclosure, AAU urges the Department to remove the requirement to collect and publish the names and addresses of individual foreign donors.

### *IV. The Proposed Expansion of Acknowledgment and Certification Requirements Exceeds the Department's Authority and Creates Unjustifiable Legal Exposure.*

---

[8] *First Choice Women's Resource Centers, Inc. v. Platkin*, 602 U.S. ___ (2026).
[9] Id.

AAU is also concerned about the expanded acknowledgment and certification language in the proposed ICR. The current reporting portal requires institutions to certify compliance under penalty of the federal false statements statute, 18 U.S.C. § 1001. The proposed ICR appears to expand or modify this certification in ways that go beyond what prior iterations required, exposing institutional signatories to heightened personal liability for good-faith judgments made under conditions of genuine regulatory ambiguity created by the absence of formal guidance or regulations on Section 117. Requiring the proposed certification of compliance with undefined – and disputed – requirements is unreasonable. The Department should rescind these changes and engage in rulemaking before seeking expanded certifications.

**(Question 4) How might the Department enhance the quality, utility, and clarity of the information to be collected?**

***I. The Dashboard Requires Refinement to Ensure Accuracy and Avoid Public Misrepresentation.***

If the Department proceeds with the proposed changes to the public dashboard, AAU urges it to improve the existing search tool to enable accurate public understanding and transparency, and to avoid presenting data solely in a cumulative form that could create misleading impressions about institutions' current and past foreign funding relationships. The current dashboard aggregates all reported foreign gifts and contracts since 1986 and only allows those aggregates to be sorted by various government entity lists. It does not, however, allow users to filter and disaggregate this data by date and year to determine when a specific gift or contract was received by an institution.

This design risks leading the public to infer that institutions have current or ongoing financial relationships with listed entities, when in many cases institutions ended those relationships several years ago. This makes it virtually impossible for a user to determine if an institution's gifts or contracts from a specific country have changed over time. While a comprehensive downloadable spreadsheet is available, most users are unlikely to locate it or possess the expertise to analyze it accurately, making the dashboard itself the primary lens for public interpretation.

The Department could substantially improve the utility and accuracy of the dashboard by making the following enhancements:

- **Add date-based filtering and views.** Allow users to filter data by reporting year, date range, or reporting cycle so that they can readily distinguish between historical activity and recent or ongoing foreign relationships.
- **Disaggregate cumulative totals.** Present both cumulative totals and year-by-year data, enabling users to understand trends over time and identify when specific gifts or contracts occurred.
- **Distinguish between historical and current relationships.** Include indicators or labels showing whether a reported gift or contract is concluded, inactive, or recent, to reduce the risk that historical data will be mistaken for present-day foreign collaborations or institutional agreements.
- **Provide definitions and source links.** Include clear definitions for each government list referenced on the dashboard, along with direct links to the originating agency's official website.
- **Add a methodological transparency section.** Include a methodology section that describes the dashboard's data sources, institutional reporting requirements under Section 117, the frequency with which the dashboard is updated, the most recent reporting period, when the most recent data was incorporated into the dashboard by the Department, and the known limitations of the underlying data.

These enhancements would significantly improve the accuracy, transparency, and fairness of the information available to both the public and policymakers. They would also reduce the risk of the dashboard supporting misguided conclusions or poorly informed public policies that arise from its current deficiencies, including limited search and filtering functions and data disaggregation capabilities.

**Conclusion**

AAU appreciates the opportunity to submit these comments and urges the Department to: (1) pursue any expansion of Section 117 reporting requirements through formal notice-and-comment rulemaking; (2) refrain from publicly disclosing the names and addresses of individual foreign donors; (3) rescind changes to the acknowledgement/attestation and FOIA checkbox, and (4) improve the dashboard and its filtering and search capabilities to ensure information presented to the public and to policymakers is accurate, contextualized, and not misleading.

AAU also endorses the comments submitted by other higher education associations, including the American Council on Education, and appreciates the continued collaboration across the higher education community to provide the Department with constructive and substantive feedback on matters relating to Section 117.

We look forward to continued engagement on this matter and welcome any opportunity to discuss these comments further.