# EXHIBIT 13

ACE® American Council on Education®
One Dupont Circle NW
Washington, DC 20036
(202) 939-9300
acenet.edu

February 27, 2023

Manager of the Strategic Collections and Clearance Governance and Strategy Division
Federal Student Aid
U.S. Department of Education
400 Maryland Ave, SW
Room 6W203
Washington, DC 20202-8240

**Re: Request for Comments; Agency Information Collection Activities; Foreign Gifts and Contracts Disclosures, Docket ID number ED-2022-SCC-0159**

Dear Manager:

On behalf of the American Council on Education and the undersigned higher education associations, I write to offer comments on the proposed Information Collection Request (ICR) published in the *Federal Register* by the Department of Education (ED) on December 27, 2022, Docket No. ED-2022-SCC-0159. We appreciate the opportunity to again comment on the ICR being used to collect information for the Section 117 foreign gifts and contracts reporting requirement.[1]

The higher education community takes seriously its reporting obligations under Section 117 of the Higher Education Act (HEA). As you know, our associations and the broader higher education community continue to work with the national security and research agencies to address concerns raised by federal policymakers regarding the possibilities of undue foreign influence and research security. While we appreciate the opportunity to comment on the proposed ICR, we believe that the Department continues to exceed its statutory authority in several key areas. In addition, we continue to urge the ED to carry out a formal rulemaking process that will allow for full engagement with stakeholders and ultimately provide a regulatory framework for Section 117 to help ensure that institutions of higher education understand and can comply with their statutory obligations.

As part of the implementation of National Security Presidential Memorandum 33 (NSPM-33), the administration has committed "to increase clarity and reduce administrative burden" of the various efforts and reporting requirements regarding foreign sources of funding. However, in contrast to this charge to federal agencies in NSPM-33, this ICR does NOT increase clarity or reduce the administrative burden for institutions.[2] The supporting statement for this ICR also

---

[1] See November 5, 2019 comments re: Foreign Gift and Contracts Disclosure- Docket No. ED-2019-ICCD-0114: https://www.acenet.edu/Documents/Comments-Memo-Sec-117.pdf, 2019 comments re: Foreign Gifts and Contracts Disclosure- Docket No. ED-ICCD-0154: https://www.acenet.edu/Documents/Sec-117-Updated-ICR-Comment-Letter-Memo.pdf

[2] "Section 4(b)(vi) directs that "agencies should standardize forms for initial disclosures as well as annual updates, … and should provide clear instructions to accompany these forms and to minimize any associated administrative burden….." Page

references the new requirement in the recently passed CHIPS and Science Act that institutions receiving National Science Foundation (NSF) funding will now be required to submit "summaries" of foreign gifts from certain countries to the NSF.[3] Although not included in this ICR, we urge ED and NSF, where appropriate, to coordinate on these similar reporting requirements and work with stakeholders to conform definitions and reduce the administrative burden of these reporting requirements.

## Issues we support in the proposed ICR

*Transfer from OGC to FSA*

The notice indicates that ED intends to transfer Section 117 data collection from the Office of the General Counsel (OGC) to the Federal Student Aid (FSA) office.[4] This returns Section 117 back to FSA, where it had resided for many years. For smaller institutions without research grants, this is useful because changes and reminders about Section 117 were communicated through the Information for Financial Aid Professionals (IFAP) system (now FSA Partner Connect) and questions were answered by FSA regional offices, where institutions often had established relationships. We hope this transfer will improve the Section 117 reporting process and communication with institutions of higher education.

*Additional information on "money out" contracts*

In the proposed ICR, ED clarifies that institutions do NOT need to report on "money out" contracts as part of Section 117 reporting.[5] As the new ICR notes in the definition of "contract," "Contracts involving purchases by institutions from foreign sources are generally not reportable so long as they are arms-length, fair market value transactions." There are numerous examples of appropriate, arms-length business relationships between institutions of higher education (IHEs) and foreign corporations involving purchases of services or products from the foreign corporation. We appreciate this clarification.

---

2, Guidance for Implementing National Security Presidential Memorandum 33 (NSPM-33) on National Security Strategy for United States Government-Supported Research and Development"

[3] CHIPS and Science Act summary: "Sec. 10339B. Foreign financial support. Directs the Foundation to collect annual summaries of foreign financial support from universities and authorizes the Foundation to request copies of contracts or documentation related to such disclosures. The provision establishes a reporting threshold of $50,000 or more, including gifts and contracts, received directly or indirectly from a foreign source."
See ED supporting statement #4 "Section 10339B of the Research and Development, Competition, and Innovation Act, Division B of P.L. 117-167 (commonly known as the CHIPS and Science Act of 2022), recently imposed a requirement that the Director of the National Science Foundation (NSF) request certain disclosures from institutions of higher education of the current financial support received from a foreign source associated with a foreign country of concern. The Department is aware of this NSF requirement, which appears to seek similar information as the proposed information collection, and the potential for duplication from the perspective of an institution of higher education."

[4] See supporting statement #1 "With this request for a new collection, the Department would be returning the collection of this information to FSA, which is the office with primary responsibility for the administration of Section 117 within the Department going forward."

[5] See page 2 of proposed ICR: "Contract" has the meaning given at 20 U.S.C. § 1011f(h)(1). "Contracts involving purchases by institutions from foreign sources are generally not reportable so long as they are arms-length, fair market value transactions."

## ***ED continues to exceed its statutory authority***

*Reporting of "intermediaries"*

As mentioned above, we continue to be troubled by the ED exceeding its statutory authority regarding Section 117, including the expanded definition of "intermediaries" and the requirement to submit names and addresses for anonymous foreign gifts, absent any changes to the statute or formal rulemaking. The proposed ICR continues to reference required reporting of gifts and contracts to "intermediaries" of institutions of higher education, while providing no clear definition of "intermediaries."[6] The Section 117 statute defines an "institution" as "any institution, public or private, or if a multi-campus institution, any single campus of such institution…"[7] This statutory definition of "institution" is consistent with Section 101 of the HEA. This ICR, as with the previous ICR, appears to include independent organizations that are completely, legally separate from the institution, with their own staff and governing boards. The institution is unlikely to have any authority over such organizations and is unable to compel the release of data. With this ICR, ED is continuing to seek to expand the definition of "institution" of higher education, beyond its statutory authority, to include university foundations, university hospitals, athletic boosters, research entities, alumni organizations, so-called "supporting organizations," and other related entities, even if they are separate legal entities under the Internal Revenue Code's (IRC) Sec. 501(c)(3) and/or Sec. 509(a)(3). This is a substantial change from the statute that has never been subjected to a formal rulemaking process.

*Names and addresses of anonymous gifts*

The supporting statement under #10 states that ED will not make "names and addresses provided through this information collection request part of the publicly available disclosure report." In addition, the supporting statement states "the Department is required to withhold confidential business and financial information requested under the Freedom of Information Act pursuant to 5 U.S.C.§ 552 (b)(4) and 34 C.F.R. §5.11. We will strictly adhere to this prohibition." With this language, the supporting statement seems to imply that institutions will be required to report names and addresses of anonymous gifts.

The Section 117 statute provides that institutions are to report "the aggregate dollar amount of such gifts . . . attributable to a particular country. The country to which a gift is attributable is the country of citizenship, *or if unknown*, the principal residence for a foreign source who is a

---

[6] Page 1 of new ICR: "The Department is aware that the stated purpose and/or function of some legal entities (as articulated in articles of incorporation, for example) is to serve as an intermediary for foreign source gifts to or contracts with an institution. Allowing foreign sources and institutions to avoid disclosure by using intermediaries to transfer funds and benefit would be contrary to the plain statutory language, context, and purpose of Section 117. Therefore, foreign source gifts to or contracts with an intermediary that benefit an institution are reportable."

[7] "Any institution, public or private, or if a multi-campus institution, any single campus of such institution, in any State that – (A) is legally authorized within such State to provide a program of education beyond secondary level; (B) provides a program for which it awards a bachelor's degree (or provides not less than a 2-year program which is acceptable for full credit toward such a degree) or more advanced degrees; and (C) is accredited by a nationally recognized accrediting agency or association and to which institution federal financial assistance is extended (directly or indirectly through another entity or person), or which institution receives support from the extension of Federal financial assistance to any of its subunits."

natural person" (emphasis added). This is at odds with the common practice and longstanding policy at many institutions of allowing all donors, including those living in other countries, to request confidentiality in their giving.

In addition, we are concerned about the slippery constitutional slope created by the ICR requirement that institutions disclose in their Section 117 reporting the names of natural person donors. Recently, in striking down a state's donor disclosure law applicable to nonprofits, the Supreme Court based its holding on the well-established First Amendment right of nonprofit organizations not to disclose confidential donor information because of the risk that public disclosure could potentially chill associational rights.[8] If ED continues to ask for the names and addresses of anonymous donors, this must be addressed through a change in the statute, similar to IRS Form 990. IRS Form 990 provides the government the information it needs to conduct oversight under a specific statutory authorization by Congress, while also restricting the IRS from publicly disclosing the collected donor information[9]. If ED wants to collect anonymous donor information, Congress would need to grant specific statutory authorization in a manner similar to the Internal Revenue Code. Until that is addressed, the Department cannot guarantee information won't be disclosed via the FOIA process.

*Section 117 as part of an institution's PPA*

In 2020, ED announced a Notice of Interpretation (NOI) that incorporates failure to report Section 117-covered foreign gifts and contracts as a violation of the Department's Title IV program participation agreement (PPA).[10] There is already an enforcement provision included in Section 117, in which ED can refer an institution to the Department of Justice to ensure compliance. Following a knowing or willful failure to comply, a school must reimburse the U.S. Treasury for the full cost to the government of obtaining compliance. Congress has given ED the authority to revoke access to federal financial student aid for a number of violations, but not for Section 117. Congress put foreign gift reporting in Title I of the HEA more than 35 years ago. If Congress wanted foreign gift reporting to be tied to financial aid for low-income students, it would have placed those requirements in Title IV. The NOI tying Section 117 requirements to an institution's PPA exceeds ED's existing statutory authority and should be withdrawn.

## Other Issues of Concern with the ICR

*Continuing issues with reporting portal*

The notice makes clear that FSA will continue to use the problematic reporting portal through the Department of Education's Partner Enterprise Business Collaboration (PEBC) system.[11] As we have previously communicated, the current portal and process for entering data is administratively burdensome and invites data entry errors, with no means to correct those

[8] See Americans for Prosperity Foundation v. Bona, 141 S.Ct. 2373, _ (2021)
[9] See 26 U.S.C. §§ 6104 (b) & (d)(3)(A)
[10] November 13, 2020 notice: https://www2.ed.gov/policy/highered/leg/sec117-noi-final.pdf
[11] See supporting statement #1 "At present, the Department plans to continue to collect this data through its PEBC system. The specifics of this data collection will not change the current process or reporting system in any material respects."

errors after the report is submitted. We urge ED to update the portal to make it easier for institutions to use, such as allowing for batch reporting (rather than requiring the entry of every specific gift or contract individually). **Attached are technical questions regarding the portal, which we have previously communicated to ED.** Without a significant upgrade to the portal, compliance with Section 117 will remain burdensome, expensive, and likely to cause reporting mistakes.

*Confusion regarding ED guidance for reporting tuition paid by foreign sources*

The Department's electronic announcement of June 22, 2020 (Appendix B) includes the following instruction: "We generally consider instances where a foreign source pays tuition for a student or students to meet the definition of a "contract" under Section 117(h)(1). An institution would only need to report this type of contract if the $250,000 threshold is met by a given foreign source. We note the threshold would likely be met in situations where a foreign source pays tuition for multiple students and the aggregate amount exceeds the $250,000 threshold." ED should clarify explicitly that only restricted or conditional contracts with the same foreign source for payment of tuition (and related fees) are reportable, and not tuition payments unrelated to a conditional or restricted contract.[12] Institutions would welcome such interpretive clarification to decrease the remaining institutional risk that by reporting such information, institutions are violating FERPA and other privacy laws. This and other outstanding questions could be addressed through a formal regulatory process, or in more regular engagement between ED officials and the higher education community.

*Estimate of the hour burden in the supporting statement is grossly underestimated*

As part of this notice, ED has asked "is the estimate of burden accurate" for this new ICR. In #12 of the supporting statement, ED states "a reasonable assignment of time for an institution to use the data collection system to process a submission is ten (10) hours per report. This includes the time necessary to gather the information for the report as well as the time necessary to enter and submit the information into the data collection system."

We believe ED continues to vastly underestimate the administrative and cost burden resulting from this information collection. It is not uncommon for universities and colleges—which are highly decentralized operations—to receive hundreds of gifts or enter into contracts each year potentially covered by this ICR. An example from a large public research university shows an average of 40 hours or more of staff time is needed twice a year to submit 35 to 40 disclosures. By comparison, prior to implementation of the ICR, the process required no more than 10 hours of staff time at this institution.

Much of this burden could be addressed through a negotiated rulemaking process to provide clarity around definitions, and updates to the reporting portal through engagement with the stakeholder community, such as a process to receive technical feedback on this portal or a creation of a user community group to help work on system enhancements.

---

[12] Consistent with slide 32 of ED's June 23, 2022, webinar on Section 117: https://www2.ed.gov/policy/highered/leg/section117-webinar-202206.pdf

Within FSA, we continue to call for ED to establish a clearly identifiable, single point of contact regarding Section 117 so institutions can get timely answers to questions as they complete reports. Currently, ED shares two general email addresses, and institutions have not been able to rely on timely email responses. If ED is to be a reliable partner, institutions must have access to a clear and reliable source of information to answer inquiries.

We appreciate the opportunity to comment on the ICR, and we continue to urge ED to continue to engage with higher education stakeholders in regular and substantial engagement on Section 117 reporting.

Sincerely,

Ted Mitchell, President

*Attachment*

On behalf of:

American Association of Community Colleges
American Association of State Colleges and Universities
American Council on Education
American Dental Education Association
Association of American Medical Colleges
Association of American Universities
Association of Catholic Colleges and Universities
Association of Governing Boards of Universities and Colleges
Association of Jesuit Colleges and Universities
Association of Public and Land-grant Universities
College and University Professional Association for Human Resources
Council for Advancement and Support of Education
Council for Christian Colleges & Universities
Council of Graduate Schools
Council on Governmental Relations
EDUCAUSE
NAFSA: Association of International Educators
National Association of College and University Business Officers
National Association of Independent Colleges and Universities
National Association of Student Financial Aid Administrators

## Technical Questions Regarding the Department of Education Section 117 Portal

The most urgent issue involves system problems with the new electronic reporting portal that the Department of Education (ED) unveiled in 2020. Below is a list of questions and issues colleges and universities confront navigating the new portal:

1. Will there be an opportunity to provide technical feedback on this portal? For instance, the new portal does not allow for batch reporting, which has substantially increased the time and burden to complete the form.

2. Could ED create a user community group to help work with them on system enhancements?

3. When will ED be adding upload functionality so that records don't need to be entered individually? The agreement-by-agreement process for entering data is administratively burdensome and invites data entry errors.

4. Will ED publish a portal users guide, including areas such as how to edit an entry and how to report errors?

5. Could ED create a test instance of the system so users can become acquainted with the functionality of the system without having to submit an actual record?

6. Can the functionality be modified so that information does not need to be entered over and over for each record, such as institutional information? This would greatly ease administrative burden associated with data entry.

7. Can the functionality be modified so that multiple individuals can enter and submit records and all individuals at an institution with access can view all drafts and submissions for the institution?

8. Can the certifications on individual pages be removed and the final acknowledgement and certification be used to cover the submitted record and information?

9. Can text boxes be set up to wrap on screen and also when printing?

10. Can system be modified to work in browsers other than Internet Explorer?

11. Can the functionality in the system be modified to allow an institutional user to download the full set of records that were submitted rather than printing each individual submission?

12. Can the functionality be modified to add an ID number for draft entries to assist in tracking records that have been entered?