# EXHIBIT 14

Tracking and OMB Number: 1801-NEW
Revised: 04/13/2020

# SUPPORTING STATEMENT

# FOR PAPERWORK REDUCTION ACT SUBMISSION

1. Explain the circumstances that make the collection of information necessary. Identify any legal or administrative requirements that necessitate the collection. Attach a hard copy of the appropriate section of each statute and regulation mandating or authorizing the collection of information, or you may provide a valid URL link or paste the applicable section. Specify the review type of the collection (new, revision, extension, reinstatement with change, reinstatement without change). If revised, briefly specify the changes. If a rulemaking is involved, make note of the sections or changed sections, if applicable.

   Section 117 of the Higher Education Act of 1965 (HEA), as amended, provides that institutions of higher education must file a disclosure report with the Secretary of Education under the following circumstances:

   Whenever any institution is owned or controlled by a foreign source or receives a gift from or enters into a contract with a foreign source, the value of which is $250,000 or more, considered alone or in combination with all other gifts from or contracts with that foreign source within a calendar year, the institution shall file a disclosure report with the Secretary on January 31 or July 31, whichever is sooner. (see https://www.govinfo.gov/content/pkg/USCODE-2017-title20/pdf/USCODE-2017-title20-chap28-subchapI-partB-sec1011e.pdf).

   We have attempted to collect similar information via our approved Application to Participate in Federal Student Financial Aid Program (e-App), OMB Control Number 1845-0012, but have not received sufficient information to meet Congressional requirements and/or enforce the statute. Consequently, after the January 2020 reporting deadline, we do not plan to continue collecting this information under the e-App and instead are establishing this new collection of information. This new collection is necessary to ensure institutions provide Congressionally-mandated transparency with respect to covered gifts from and contracts with foreign sources, the public has ready and meaningful access to this information, and the Secretary receives more detailed information about covered gifts or contracts involving a foreign source, or about ownership or control of the institution by a foreign source, to be able to determine whether it appears an institution has failed to comply with the requirements of 20 U.S.C. 1011f.

   Currently, our Application to Participate in Federal Student Financial Aid Programs has not collected sufficient information to determine compliance with 20 U.S.C. 1011f, to encourage institutions full reporting of covered gifts and contracts from foreign sources, and to provide members of the public with statutorily-mandated access to accurate information regarding institutions' gifts

from and contracts with foreign sources. Based on several Government Accountability Office reports (See https://www.gao.gov/assets/700/696859.pdf; https://www.gao.gov/assets/700/697156.pdf; and https://www.gao.gov/assets/680/679322.pdf) and a congressional report (See http://www.hsgac.senate.gov/download/majority-and-minority-staff-report_-chinas-impact-on-the-us-education-system), there is evidence that institutions are failing to file required disclosures to the Department under the current approach. Furthermore, we have recently opened investigations regarding potential noncompliance with Section 117 and these investigations have preliminarily shown that institutions have failed to disclose billions of dollars of gifts from and contracts with foreign sources. (See for example https://www.govinfo.gov/content/pkg/FR-2019-06-28/pdf/2019-13904.pdf and https://www.govinfo.gov/content/pkg/FR-2019-07-19/pdf/2019-15425.pdf). We believe that making these questions more detailed and moving them into a separate information collection instrument will help to ensure that institutions comply with the statutory disclosure requirement and provide the public with information as Congress has intended.

2. Indicate how, by whom, and for what purpose the information is to be used. Except for a new collection, indicate the actual use the agency has made of the information received from the current collection.

The plain language and Congressional purpose of Section 117 require institutions subject to this information request to disclose fully foreign money provided to them the value of which is $250,000 or more, considered alone or in combination with all other gifts from or contracts with that foreign source within a calendar year. The statute requires the disclosure reports to be made readily available to the public. Also, the Department will use this information to inform its enforcement work under 20 U.S.C. 1011f, enabling it to make recommendations to the Attorney General for civil or criminal enforcement actions as provided by law and as appropriate. Currently, the Department is not receiving sufficient information to determine compliance with the statutory language and Congressional purpose or to enforce Section 117's provisions.

In question 71 of the e-App, "Reporting of Foreign Gifts, Contracts and Relationships," institutions are required to provide seven data elements: (1) gift type; (2) date received; (3) amount; (4) giver name; (5) country; (6) contract start date; and (7) contract end date. If an institution received a restricted or conditional gift or contract, it must also submit an additional data element—a description of the conditions or restrictions—in question 69. We have expanded on the two e-APP questions in this new information collection by clearly specifying each of the statutory disclosure report requirements, such as providing "[t]he country to which a gift is attributable[, that is,] is the country of citizenship, or if unknown, the principal residence for a foreign source who is a natural person, and the country of incorporation, or if unknown, the principal place of business, for a foreign source which is a legal entity." We have also specified

information needed for the Department to comply with the statutory enforcement provision (i.e., name and address).

3. Describe whether, and to what extent, the collection of information involves the use of automated, electronic, mechanical, or other technological collection techniques or forms of information technology, e.g. permitting electronic submission of responses, and the basis for the decision of adopting this means of collection. Also describe any consideration given to using technology to reduce burden.

   The collection instrument would be available on a new reporting portal developed specifically to facilitate the electronic submission of Section 117 information by institutions. We chose this means of collection, in part, to minimize the burden for institutions.

4. Describe efforts to identify duplication. Show specifically why any similar information already available cannot be used or modified for use for the purposes described in Item 2 above.

   This request is not duplicative of other information collections. We have attempted to collect similar information via our approved Application to Participate in Federal Student Financial Aid Program (e-App), OMB Control Number 1845-0012, but have not received sufficient information to meet Congressional requirements and/or enforce the statute. After the January 2020 reporting deadline, we do not plan to continue collecting information about foreign gifts or contracts through the e-App and we will modify the information collection request for the e-App accordingly.

5. If the collection of information impacts small businesses or other small entities, describe any methods used to minimize burden. A small entity may be (1) a small business which is deemed to be one that is independently owned and operated and that is not dominant in its field of operation; (2) a small organization that is any not-for-profit enterprise that is independently owned and operated and is not dominant in its field; or (3) a small government jurisdiction, which is a government of a city, county, town, township, school district, or special district with a population of less than 50,000.

   In looking at the reporting data accumulated through the e-App since 2010, out of 132 institutions that have reported at least 10 transactions to the Department, 5 institutions (or 3.7 percent) are considered small. Therefore, this information collection does not significantly impact small businesses or other small entities.

6. Describe the consequences to Federal program or policy activities if the collection is not conducted or is conducted less frequently, as well as any technical or legal obstacles to reducing burden.

   If the collection is not conducted or is conducted less frequently, then the Department will be in violation of its statutory duties, it will be unable to provide

public transparency as required by Congress, and it will not be able to enforce the provisions of 20 U.S.C. 1011f, as recent evidence has shown.

7. Explain any special circumstances that would cause an information collection to be conducted in a manner:

   - requiring respondents to report information to the agency more often than quarterly;
   - requiring respondents to prepare a written response to a collection of information in fewer than 30 days after receipt of it;
   - requiring respondents to submit more than an original and two copies of any document;
   - requiring respondents to retain records, other than health, medical, government contract, grant-in-aid, or tax records for more than three years;
   - in connection with a statistical survey, that is not designed to produce valid and reliable results than can be generalized to the universe of study;
   - requiring the use of a statistical data classification that has not been reviewed and approved by OMB;
   - that includes a pledge of confidentiality that is not supported by authority established in statute or regulation, that is not supported by disclosure and data security policies that are consistent with the pledge, or that unnecessarily impedes sharing of data with other agencies for compatible confidential use; or
   - requiring respondents to submit proprietary trade secrets, or other confidential information unless the agency can demonstrate that it has instituted procedures to protect the information's confidentiality to the extent permitted by law.

   This collection of information does not meet any of the special circumstances described above.

8. As applicable, state that the Department has published the 60 and 30 Federal Register notices as required by 5 CFR 1320.8(d), soliciting comments on the information collection prior to submission to OMB. Summarize public comments received in response to that notice and describe actions taken by the agency in response to these comments. Specifically address comments received on cost and hour burden.

   Describe efforts to consult with persons outside the agency to obtain their views on the availability of data, frequency of collection, the clarity of instruction and record keeping, disclosure, or reporting format (if any), and on the data elements to be recorded, disclosed, or reported.

   Consultation with representatives of those from whom information is to be obtained or those who must compile records should occur at least once every 3 years – even if the collection of information activity is the same as in prior periods. There may be circumstances that may preclude consultation in a specific situation. These circumstances should be explained.

The 60-day Federal Register Notice requesting public comment was published September 6, 2019 (Vol. 84, No. 173, pages 46943-46944). Forty-one comments were received. See our response to public comments which is submitted as part of this information collection request. A subsequent Federal Register Notice was published on December 17, 2019 (Vol. 84, No. 242 68911), in which the Department requested the Office of Management conduct an emergency review. The Department withdrew this action because we determined it would better serve the public to pursue approval of a standard ICR as well as publish a 30-day comment period notice to solicit additional public input. The 30 day notice was published on February 10, 2020 (Vol. 85 7540). A response to public comments is provided. In addition, before we published the 60-day Federal Register Notice, the Department consulted with Federal national security stakeholders.

9. Explain any decision to provide any payment or gift to respondents, other than remuneration of contractors or grantees with meaningful justification.

No payments or gifts will be provided to respondents.

10. Describe any assurance of confidentiality provided to respondents and the basis for the assurance in statute, regulation, or agency policy. If personally identifiable information (PII) is being collected, a Privacy Act statement should be included on the instrument. Please provide a citation for the Systems of Record Notice and the date a Privacy Impact Assessment was completed as indicated on the IC Data Form. A confidentiality statement with a legal citation that authorizes the pledge of confidentiality should be provided.[1] If the collection is subject to the Privacy Act, the Privacy Act statement is deemed sufficient with respect to confidentiality. If there is no expectation of confidentiality, simply state that the Department makes no pledge about the confidentially of the data.

The Department will not make the names and addresses provided through this information collection request part of the publicly available disclosure report. Additionally, the Department is required to withhold confidential business and financial information requested under the Freedom of Information Act pursuant to 5 U.S.C. 552(b)(4) and 34 CFR 5.11. We will strictly adhere to this prohibition.

11. Provide additional justification for any questions of a sensitive nature, such as sexual behavior and attitudes, religious beliefs, and other matters that are commonly considered private. The justification should include the reasons why the agency considers the questions necessary, the specific uses to be made of the information, the explanation to be

---

[1] Requests for this information are in accordance with the following ED and OMB policies: Privacy Act of 1974, OMB Circular A-108 – Privacy Act Implementation – Guidelines and Responsibilities, OMB Circular A-130 Appendix I – Federal Agency Responsibilities for Maintaining Records About Individuals, OMB M-03-22 – OMB Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002, OMB M-06-15 – Safeguarding Personally Identifiable Information, OM:6-104 – Privacy Act of 1974 (Collection, Use and Protection of Personally Identifiable Information)

given to persons from whom the information is requested, and any steps to be taken to obtain their consent.

This collection does not ask any such questions.

12. Provide estimates of the hour burden of the collection of information. The statement should:

- Indicate the number of respondents by affected public type (Federal government, individuals or households, private sector – businesses or other for-profit, private sector – not-for-profit institutions, farms, state, local or tribal governments), frequency of response, annual hour burden, and an explanation of how the burden was estimated, including identification of burden type: recordkeeping, reporting or third party disclosure. All narrative should be included in item 12. Unless directed to do so, agencies should not conduct special surveys to obtain information on which to base hour burden estimates. Consultation with a sample (fewer than 10) of potential respondents is desirable. If the hour burden on respondents is expected to vary widely because of differences in activity, size, or complexity, show the range of estimated hour burden, and explain the reasons for the variance. Generally, estimates should not include burden hours for customary and usual business practices.
- If this request for approval covers more than one form, provide separate hour burden estimates for each form and aggregate the hour burdens in the ROCIS IC Burden Analysis Table. (The table should at minimum include Respondent types, IC activity, Respondent and Responses, Hours/Response, and Total Hours)
- Provide estimates of annualized cost to respondents of the hour burdens for collections of information, identifying and using appropriate wage rate categories. The cost of contracting out or paying outside parties for information collection activities should not be included here. Instead, this cost should be included in Item 14.

We have revised our initial burden estimates based on public comments we received. For more information on the comments we received related to our burden estimates and our response to those comments, please see our response to public comments on the 60-day Federal Register Notice which is submitted separately as part of this information collection request.

Through the e-App, we have received 21,052 disclosures from 162 universities between 2012-2018. (https://studentaid.ed.gov/sa/sites/default/files/fsawg/datacenter/library/ForeignGifts.xls). Using the U.S. Senate Permanent Subcommittee on Investigations' China's Impact on the U.S. Education System Report, we estimate that 70% of all institutions of higher education that receive gifts or contracts from foreign sources are not filing the proper disclosures under 20 U.S.C. 1011f. (http://www.hsgac.senate.gov/download/majority-and-minority-staff-report_-chinas-impact-on-the-us-education-system). Because the disclosures from the

162 total reporting institutions were received over a seven-year timeframe, we are using the average number of respondents from whom we have received disclosures over that timeframe (162/7), which is 24 when rounded up, to help develop our estimate for the annual number of respondents. Taking into account the 70% of institutions we estimate are not filing the proper disclosures, we estimate that there will be 80 total respondents annually. We estimate that it will take an institution 20 hours on average to complete the required reporting and further estimate the need for each institution to file 5 reports during the year for a total annual burden of 8,000 hours (80 institutions x 5 reports x 20 hours per report).

| Entity | Respondents | Responses/Year | Hours/Response | Burden Hours | Cost |
|---|---|---|---|---|---|
| Public | 28 | 28 x 5 = 140 | X 20 hours | 2,800 | $67,060 |
| Private | 26 | 26 x 5 = 130 | X 20 hours | 2,600 | $62,270 |
| For-Profit | 26 | 26 x 5 = 130 | X 20 hours | 2,600 | $62,270 |
| TOTAL | 80 | 400 | | 8,000 | $191,600 |

We estimate that it would take a professional staff employee at an institution of higher education 18 hours to complete the disclosure and it would take a Senior Administrator 2 hours to review and approve the disclosure report. Below is a table of the cost burden per response using these estimates:

| Position | Wage Rate Category | Cost Per Hour | Hours Expended | Cost Burden |
|---|---|---|---|---|
| Senior Administrator | $200,140 | $96.22 | 2 | $192.00 |
| Professional Staff | $33,170 | $15.95 | 18 | $287.00 |
| Total | | | 20 | $479.00 |

Multiplying the total cost burden for the 400 responses per year by the cost burden of $479 per response equals a total cost burden estimate of $191,600.[2]

[2] Although we increased the estimate for the number of hours it will take institutions to report these disclosures, the total cost listed here is lower than the total cost listed in the supporting statement for the prior, 60-day Federal Register notice. That is due to a clerical error in the prior estimate where an extra zero was added to the cost estimates mistakenly. The total cost estimate in the prior supporting statement should have been $96,000 (400 responses per year x $240 cost per response).

13. Provide an estimate of the total annual cost burden to respondents or record keepers resulting from the collection of information. (Do not include the cost of any hour burden shown in Items 12 and 14.)

- The cost estimate should be split into two components: (a) a total capital and start-up cost component (annualized over its expected useful life); and (b) a total operation and maintenance and purchase of services component. The estimates should take into account costs associated with generating, maintaining, and disclosing or providing the information. Include descriptions of methods used to estimate major cost factors including system and technology acquisition, expected useful life of capital equipment, the discount rate(s), and the time period over which costs will be incurred. Capital and start-up costs include, among other items, preparations for collecting information such as purchasing computers and software; monitoring, sampling, drilling and testing equipment; and acquiring and maintaining record storage facilities.
- If cost estimates are expected to vary widely, agencies should present ranges of cost burdens and explain the reasons for the variance. The cost of contracting out information collection services should be a part of this cost burden estimate. In developing cost burden estimates, agencies may consult with a sample of respondents (fewer than 10), utilize the 60-day pre-OMB submission public comment process and use existing economic or regulatory impact analysis associated with the rulemaking containing the information collection, as appropriate.
- Generally, estimates should not include purchases of equipment or services, or portions thereof, made: (1) prior to October 1, 1995, (2) to achieve regulatory compliance with requirements not associated with the information collection, (3) for reasons other than to provide information or keep records for the government or (4) as part of customary and usual business or private practices. Also, these estimates should not include the hourly costs (i.e., the monetization of the hours) captured above in Item 12

Total Annualized Capital/Startup Cost :

Total Annual Costs (O&M) :____________________

Total Annualized Costs Requested :

There is no cost burden to respondents or record-keepers resulting from the information collection other than shown in items 12 and 14. The total government expense for capital and start- up costs for this Information Collection is $0 for creation of a web portal and public-facing website.

14. Provide estimates of annualized cost to the Federal government. Also, provide a description of the method used to estimate cost, which should include quantification of

hours, operational expenses (such as equipment, overhead, printing, and support staff), and any other expense that would not have been incurred without this collection of information. Agencies also may aggregate cost estimates from Items 12, 13, and 14 in a single table.

REVIEWERS COSTS: Identifies the amount of time for a reviewer to examine the information submitted through the disclosure. This information is then reported out to the appropriate officials.

| Number of Disclosures Submitted Annually | Hours Required for ED Review | Total Hours | Average Hourly Wage | Estimated cost per CFR Requirement |
|---|---|---|---|---|
| 400 | 2 | 800 | $35 | $28,000 |

15. Explain the reasons for any program changes or adjustments. Generally, adjustments in burden result from re-estimating burden and/or from economic phenomenon outside of an agency's control (e.g., correcting a burden estimate or an organic increase in the size of the reporting universe). Program changes result from a deliberate action that materially changes a collection of information and generally are result of new statute or an agency action (e.g., changing a form, revising regulations, redefining the respondent universe, etc.). Burden changes should be disaggregated by type of change (i.e., adjustment, program change due to new statute, and/or program change due to agency discretion), type of collection (new, revision, extension, reinstatement with change, reinstatement without change) and include totals for changes in burden hours, responses and costs (if applicable).

This is a new collection based on a program change to facilitate compliance with section 117 of the HEA. There is no new statutory or regulatory requirement, but there is new evidence (See https://www.gao.gov/assets/700/696859.pdf; https://www.gao.gov/assets/700/697156.pdf; https://www.gao.gov/assets/680/679322.pdf; and http://www.hsgac.senate.gov/download/majority-and-minority-staff-report_-chinas-impact-on-the-us-education-system) that institutions are failing to file required disclosures to the Department under the current approach. Furthermore, we have recently opened investigations regarding potential noncompliance with Section 117. (See for example https://www.govinfo.gov/content/pkg/FR-2019-06-28/pdf/2019-13904.pdf and https://www.govinfo.gov/content/pkg/FR-2019-07-19/pdf/2019-15425.pdf). In light of this new evidence of noncompliance with this statutory provision, the Department is establishing this new collection. Through this new collection, and to enforce compliance with Section 117's reporting obligations through a referral to the Attorney General, the new collection expands on the two e-APP questions in the previous information collection by clearly specifying each of the statutory disclosure report requirements, such as providing "[t]he country to which a gift is attributable[, that is,] is the country of citizenship, or if unknown, the principal residence for a

foreign source who is a natural person, and the country of incorporation, or if unknown, the principal place of business, for a foreign source which is a legal entity." We have also specified what is necessary for compliance with the statutory enforcement provision in 20 U.S.C. 1011f(f) (i.e., name and address). There is an estimated increase in annual burden of 8,000 hours based on 400 responses for a total cost of $191,600.

The Department is also changing the proposed disclosure form to remove the questions that requested a true copy of a gift or contract. The Department intends to promulgate a regulation, through the notice and comment rulemaking process, to establish this requirement.

16. For collections of information whose results will be published, outline plans for tabulation and publication. Address any complex analytical techniques that will be used. Provide the time schedule for the entire project, including beginning and ending dates of the collection of information, completion of report, publication dates, and other actions.

Most of the information that is submitted to the Department will be published as the required disclosure report in substantially the same form that it is submitted by institutions of higher education on the internet, except the disclosure report will not contain names and addresses. The disclosures will be published around the January and July dates the HEA requires them to be filed with the Department. In accordance with the statutory language at 20 U.S.C. 2011f, we will make the disclosure report public to ensure financial transparency regarding the relationship between U.S. universities and foreign sources.

17. If seeking approval to not display the expiration date for OMB approval of the information collection, explain the reasons that display would be inappropriate.

There are no exceptions to the certifications statement.

18. Explain each exception to the certification statement identified in the Certification of Paperwork Reduction Act.

The Department is not requesting any exceptions to the certification statement.