# EXHIBIT A

**DECLARATION OF AAU PRESIDENT BARBARA R. SNYDER**

I, Barbara R. Snyder, declare as follows:

1. I am President of the Association of American Universities ("AAU"). I have held that position since October 1, 2020.

2. I have personal knowledge of the contents of this declaration or have knowledge of the matters stated herein based on my review of information and records gathered by AAU personnel and personnel from our member institutions, and can testify thereto.

3. Founded in 1900, AAU is composed of America's leading research universities. AAU's member universities transform lives through education, research, and innovation. AAU member universities collectively help shape policy for higher education, science, and innovation; promote best practices in undergraduate and graduate education; and strengthen the contributions of leading research universities to American society. AAU's primary goal is to provide a forum for the development and implementation of institutional and national policies promoting strong programs of academic research and scholarship and undergraduate, graduate, and professional education.

4. AAU's members include 69 public and private research universities in the United States: Arizona State University; Boston University; Brandeis University; Brown University; California Institute of Technology; Carnegie Mellon University; Case Western Reserve University; Columbia University; Cornell University; Dartmouth College; Duke University; Emory University; The George Washington University; Georgia Institute of Technology; Harvard University; Indiana University; The Johns Hopkins University; Massachusetts Institute of Technology; Michigan State University; New York University; Northwestern University; The Ohio State University; The Pennsylvania State University; Princeton University; Purdue

University; Rice University; Rutgers University – New Brunswick; Stanford University; Stony Brook University – The State University of New York; Texas A&M University; Tufts University; Tulane University; University at Buffalo – The State University of New York; The University of Arizona; University of California, Berkeley; University of California, Davis; University of California, Irvine; University of California, Los Angeles; University of California, Riverside; University of California, San Diego; University of California, Santa Barbara; University of California, Santa Cruz; The University of Chicago; University of Colorado, Boulder; University of Florida; University of Illinois Urbana-Champaign; The University of Iowa; The University of Kansas; University of Maryland at College Park; University of Miami; University of Michigan; University of Minnesota, Twin Cities; University of Missouri, Columbia; The University of North Carolina at Chapel Hill; University of Notre Dame; University of Oregon; University of Pennsylvania; University of Pittsburgh; University of Rochester; University of South Florida; University of Southern California; The University of Texas at Austin; The University of Utah; University of Virginia; University of Washington; The University of Wisconsin – Madison; Vanderbilt University; Washington University in St. Louis; and Yale University.

5. The U.S. Department of Education (the "Department") informed institutions of higher education on July 6, 2026 that it would publish on July 15, 2026 the names of foreign sources previously listed on reports submitted pursuant to Section 117 of the Higher Education Act. The Department then postponed full disclosure of the names, first until July 29, 2026, and then multiple times after that date. On September 25, 2026, it announced that it would disclose all foreign source names just one week later, on October 2, 2026.

6. The Department has also made clear, in its 2026 Information Collection Request ("ICR"), U.S. Dep't of Educ., *Supporting Statement for Paperwork Reduction Act Submission:*

*Foreign Gifts and Contracts Disclosures* 5 (June 26, 2026), its intention to collect and publish the identities of foreign sources submitted in reports under Section 117 (referred to herein as "covered donors") going forward. As explained below, this is a dramatic departure from the Department's prior promises of confidentiality for foreign source names, maintained since the information first began to be collected in 2020.

7. AAU personnel and I have communicated with officials at our member institutions regarding the effects of the announced publication and the Department's expressed intent to continue collecting and publishing these names. Based on those communications and on the records that AAU maintains in the ordinary course of its work, I am personally aware of the circumstances of specific member institutions, which I describe below.

8. AAU's U.S.-based members are "institutions" subject to the reporting requirements of Section 117 of the Higher Education Act of 1965, 20 U.S.C. § 1011f. AAU's members take those obligations and compliance with them seriously.

9. Since 2020, in accordance with the Department's instructions, AAU members have reported the identities of covered donors, including their names and addresses, through the Department's reporting portals.

10. All of AAU's U.S.-based member institutions have received gifts and contracts valued at $250,000 or more from foreign sources and are thus subject to Section 117 reporting requirements, as reflected on the public Section 117 Foreign Gift & Contract Public Transparency Dashboard. The information already publicly available through this "Dashboard" confirms that the identities of AAU members' covered donors will be made public on October 2, 2026 as a result of the Department's publication decision; that is, according to the Dashboard itself, AAU members will be immediately affected by the release of information not previously disclosed.

11. AAU members, including The University of Chicago, Columbia, Cornell, University of Maryland at College Park, MIT, Penn, Princeton, The University of Wisconsin – Madison, Yale, and others, have covered donors whose identities will be revealed as a result of the Department's publication decision. Some of those institutions have themselves specifically provided assurances of confidentiality to covered donors based on the Department's prior representations and/or have informed them of the Department's own prior representations of confidentiality. Some of those institutions have covered donors who gave gifts in reliance on those assurances that the donor's identity would not be publicly disclosed. According to those institutions, without such assurances of confidentiality, some of those gifts likely would not have been made in the first place.

12. Many AAU members have expressed serious concern about losing the trust of their donors, in light of donors' established expectations of confidentiality, which were grounded in promises made by the Department. That loss of trust and risk that future assurances of confidentiality could not be honored where the Department makes an about-face would weaken institutions' ability to recruit new donors or secure repeat donations, as prospective donors would be hesitant to risk the revelation of their personal information.

13. The names that AAU's members have reported, which will be among those the Department has stated it will publish, include individual alumni and other individual donors, family and charitable foundations, and businesses and other institutions. Their gifts support a wide array of activities essential to members' educational and research missions, including research; scholarships and student financial aid; endowed professorships and other faculty positions; capital projects such as libraries, laboratories, and other campus facilities; a wide variety of academic programs; and general operations supported through capital and fundraising campaigns.

14. AAU's members, as well as covered donors, will be immediately and irreparably harmed if the Department publishes the names of reported foreign sources on October 2, 2026—harm that could never subsequently be unwound.

**A. AAU Members Have Reported the Identities of Their Covered Donors in Reliance on the Department's Assurances of Confidentiality.**

15. For decades before 2020, institutions reporting foreign gifts and contracts under Section 117 reported the amounts of qualifying gifts and contracts and the countries to which they were attributable. Except where an institution was owned or controlled by a foreign source, or where a foreign government made a restricted or conditional gift, institutions were not required to report the identities of their foreign sources, and the identities of foreign donors did not appear in the Department's public records.

16. In 2020, the Department for the first time began requesting that institutions report the names and addresses of all foreign sources. AAU members have reported the names and addresses of covered donors in reliance on the Department's written assurances that this information would not be made part of the publicly available reports under Section 117 and would in fact be withheld from public disclosure.

17. AAU members have informed me that covered donors have repeatedly expressed concern about their identities being reported to the federal government since the Department began requesting that information in 2020 and as the Department has revised its collection requirements in the intervening period. In response, some AAU members have, based on the Department's prior representations, provided donors assurances that their names would not be made public, and/or have communicated the substance of the Department's own prior assurances of confidentiality. And donors continued to give on that basis with the understanding their names would not be publicized.

18. In 2023, the Department revised its collection requirements with renewed, express assurances of confidentiality, and AAU members continued to report the identities of covered donors in reliance on those assurances. I am personally aware of specific member institutions that, in submitting those reports, used the option the Department provided in its reporting portal to indicate they considered the name and address of a covered donor to be confidential and commercial information exempt from public disclosure under Exemption 4 of the Freedom of Information Act.

**B. The Department Initially Announced Its Reversal with Nine Days' Direct Notice and then Temporarily Delayed Publication Multiple Times.**

19. On July 6, 2026, institutions, including AAU members, received an electronic announcement from the Department's Federal Student Aid Office stating that on July 15, 2026, the Department would publish its next public report of foreign source reporting, "including the names of all foreign sources from prior reporting cycles." That announcement was the first communication the Department directed to reporting institutions stating that it would publish the names institutions had previously reported under the Department's assurances of confidentiality.

20. On July 14, 2026, the Department postponed publication by two weeks. In lieu of disclosing all previously reported covered donor names, the Department instead made a limited disclosure on July 15, 2026, of 92 covered donors that had appeared on a "U.S. Government List" and were reported by institutions since 2020. The Department, in publishing this data, acknowledged that "[s]ome of the[] funds" at issue "were received by institutions of higher education before the foreign entity appeared on a U.S. Government List," and said that the Department was unable to "distinguish between those funds received before and after the foreign entity appeared on a U.S. Government List." One AAU member reported that many details regarding the 92 covered donors disclosed were inaccurate when initially posted on July 15,

including contract start and report submission dates that did not match the institution's internal records.

21. The Department also announced on July 14, 2026, that it planned to publicize the names of all other covered donors—namely, those who did not appear on any U.S. Government List—on July 29, 2026. But the Department then postponed full disclosure of all remaining covered donor names multiple times—to August 12, then August 26, September 11, and September 25, 2026.

22. On September 25, 2026, the Department officially declared its intent to publish the names of all covered donors on October 2, 2026—just one week later.

23. The Department has provided institutions with no mechanism to object to the publication of any particular covered donor's name before it occurs—even where that donor may face particularly acute risks to their life and property. Member universities have received no notice of any process by which they may assert confidentiality interests, on behalf of any covered donors, before October 2. The Department has already removed, without explanation, the check-box that had previously allowed institutions to designate a covered donor's name and address as confidential under the Freedom of Information Act.

**C. Publication Will Irreparably Harm AAU Members and Their Covered Donors.**

24. Where I describe below the circumstances of particular member universities and their covered donors, I have deliberately described them at a level of generality that does not permit identification of the donor or the member institution, because identifying them would inflict the very harm this action seeks to prevent.

25. The Department has stated that it will publish the names of reported covered donors in its public report. The Department makes its Section 117 reporting available to the general public,

including through published data spreadsheets and its public Dashboard. Any person, anywhere in the world, may access that public reporting. No recipient of that publication will be under any obligation of confidentiality. Once published, the names can be copied, indexed, and republished, and will be available to foreign governments, to the press, and to any other interested person. That is so even if the information is later taken down. So once publicized, no subsequent action by the Department or any court could restore the confidentiality of the covered donors' identities.

26. I understand from AAU members that it is relatively common for covered donors to make their gifts on the understanding that they will not be publicly named. For many covered donors, such confidentiality is a critical condition of their gift. Without an assurance of confidentiality, these sources of funding would be unavailable.

27. Member institutions' relationships with covered donors, including alumni and supporters with whom members have relationships spanning decades, were built on these representations. In reliance on the Department's unambiguous assurances of confidentiality, many members made assurances of confidentiality to their foreign donors even after the government began requiring them to submit names of covered donors. In other words, donors understood that their names would be reported to the U.S. government, but were assured—again, based on promises made by the Department—that their names would not be made publicly available.

28. Member institutions' covered donors have over time expressed significant concerns to many member institutions regarding their identities being publicly disclosed. The donors deem confidentiality essential for a variety of reasons. Some fear political and other forms of retaliation, against themselves, their families, their property, or their business interests, for associating with and supporting U.S. universities. Covered donors to specific member institutions include natural persons who reside in, or who have family, property, or business interests in, countries whose

governments monitor, harass, and retaliate against persons associated with U.S. universities, independent scholarship, or causes those governments disfavor. One institution has heard from donors in India that political retaliation is a particular concern. Another institution has heard from covered donors that they fear disclosure of their gifts because of public pressure or shaming of the donor and their family for making gifts to a U.S. institution and not investing in their home country.

29. Some fear that public identification of their giving would effectively publicize their wealth and expose them and their families to crime. One institution reported, for instance, that donor families from Southeast and East Asia have expressed concerns about the safety of their children if their wealth is made public through philanthropic recognition, including several families with local political ties in their home countries that make them vulnerable to such safety concerns. Another institution has heard similar concerns for personal safety from many covered donors from around the world, including, in particular, from donors in Brazil and India.

30. Others have religious, cultural, or personal commitments to confidential giving, or simply do not wish their philanthropy to be publicly known. For example, one AAU member has heard from a covered donor that they do not want the fact they provided a gift through a particular religious foundation to be known. Another institution has reported that a covered donor expressed concerns about their giving becoming known to other members of their home community because of the disgrace that comes from flaunting wealth in their collectively-oriented community.

31. Because foreign gifts support a wide range of institution activities, those losses will affect ongoing cutting-edge research programs, scholarships and financial aid, endowed faculty positions, capital projects (*e.g.*, building renovations, new residence halls, classrooms, equipment purchases), and academic programs. One institution stands to lose further support for a substantial scholarship if the donor's name is published. Disclosure could also specifically jeopardize future

support for particular scientific programs of study for one AAU member, including climate science, where a covered donor has specifically requested confidentiality in the past. Another institution, which has identified hundreds of covered donors at risk of disclosure, has heard from donors from countries with fraught political relationships with the United States who have expressed vocal discomfort with the disclosure of their personal information. Several member institutions have expressed concerns that the sharing of covered donor names will deter certain donors from making gifts in the future.

32. In addition, some AAU members have agreements with foreign contract partners who are not on any U.S. Government List and whose agreements are confidential. For some of these agreements, confidentiality is a material term because identifying the foreign contract partner could reveal the nature of confidential research that partner is conducting or confidential business plans. For example, a U.S. college or university may contract with an international company for research or technical supply contributing to a product. That company may reasonably view the publication of its name and the fact it has contracted with the U.S. institution, coupled with the dollar value and term of the contract, as revealing trade secrets about the nature and scope of its research and business prospects of the company—and therefore will demand confidentiality as a term of the contract. If such collected data is published by the U.S. Government, without affording a FOIA exemption process to protect business trade secrets—as it has traditionally afforded in the past—companies might reasonably look to institutions outside of the United States going forward, depriving U.S. colleges and universities of important partnerships on groundbreaking research and technical supply opportunities.

33. Publication will also inflict immediate and potentially irreparable harm on member institutions' relationships with their covered donors and on their ability to raise funds. Members

made representations of confidentiality to their donors in reliance on the Department's own assurances. Publication would undercut those representations overnight, through no fault of the institutions. Member institutions anticipate that covered donors, including donors with no fear of reprisal but who simply wish their gifts to remain confidential, may decline to provide future gifts, because they no longer trust that reported information will remain confidential. Members' ability to solicit support from their foreign alumni and other international supporters will be significantly and immediately impaired.

34. None of these harms could be remedied after the fact. Money damages cannot restore the confidentiality of a published name, remedy the consequences of threats or attacks against a donor or donor's family, or repair a broken trust.

**D. Emergency Relief Is Necessary.**

35. Once the Department publishes the names of covered donors, no later relief from any court can undo the harm. Publication will permanently destroy the confidentiality of information that member universities voluntarily provided in reliance on the Department's express assurances, and will expose their covered donors to the very dangers the Department once promised to guard against. Indeed, because any individual or foreign government could review, copy, reshare, and/or republish this information, a subsequent order revoking the publication of this information would not remedy the harms.

36. By contrast, the government has not explained why this information must be made public on October 2, especially given that it maintained for years, from 2020 onward, that such information would remain confidential. A mere delay in the Department's disclosure of this information, sufficient for a court to review the legal claims that lie against this disclosure, would impose no comparable harm on it.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 1, 2026, in Washington, D.C.

Barbara R. Snyder

BARBARA R. SNYDER